FIRST NATIONAL BANK OF
BARRON v. BERTRAM STRIMLING.
FRANKLIN NATIONAL BANK OF MINNEAPOLIS
AND ANOTHER, THIRD-PARTY DEFENDANTS.

241 N. W. 2d 478.

April 16, 1976—No. 45850.

*Popham, Haik, Schnobrich, Kaufman & Doty, Wayne G. Popham,* and *James R. Steilen,* for appellant.

*Larkin, Hoffman, Daly & Lindgren* and *Robert J. Hennessey,* for respondent plaintiff.

*Share, Evidon & Weisberg* and *Robert G. Share*, for respondent bank.

*Delaney, Thompson & O'Rourke* and *Michael J. O'Rourke*, for respondent Ringland.

Heard before Sheran, C. J., and Otis, Kelly, MacLaughlin, Scott, and Breunig, JJ., and considered and decided by the court en banc.

SCOTT, JUSTICE.

This case resulted in an order for judgment in favor of plaintiff, First National Bank of Barron (Barron), against defendant, Bertram M. Strimling, in an action on a promissory note. Strimling counterclaimed against Barron and brought a third-party action against Franklin National Bank (Franklin) and Joseph F. Ringland, Jr., claiming certain misrepresentations and the breach of some agreements made between Strimling and Ringland. The jury returned a special verdict finding that agreements and misrepresentations had been made by Ringland but that Strimling had waived his rights under each agreement and misrepresentation. The jury also found that Ringland did not have the apparent authority of either Franklin or Barron to make the representations. The trial court adopted the jury's findings and held that as a matter of law Strimling was estopped from denying liability on the loan because the transactions were entered into as illegal devices for circumventing Franklin's lending limits and that the alleged agreements to relieve Strimling of liability were against public policy. Strimling appealed from the order denying his motion for judgment notwithstanding the verdict or a new trial. Barron, Franklin, and Ringland each filed a notice of review regarding certain of the trial court's rulings and its submission of certain issues to the jury.

In 1969 Strimling became a director of Franklin and served in that capacity until 1974. During the period from June 1969 to March 1971, Ringland was president and a director of Franklin. From August 1968 until November 1973, Ringland was a director of Barron.

Dart Investment Co., Inc. (Dart) was involved in various business ventures including nursing homes, land developments, and restaurants. Dart was indebted to Franklin. In the fall of 1970, Franklin's board asked Strimling to help improve the Dart nursing home operation. Strimling entered into a contract with Dart which provided for a consulting fee of $200 per month and an option to purchase 25,000 shares of Dart stock.

Dart maintained a collateral account and an operating account at Franklin. Dart's receivables were deposited initially in the collateral account. The collateral account was a security device which required Franklin's authorization for transfer to the operating account.

In November 1970, Dart's borrowing from Franklin had reached Franklin's lending limit. Strimling alleged that in November 1970 Ringland requested that Strimling personally make a loan of $10,000 to Dart from funds that Strimling would borrow from Franklin. Strimling said that Ringland told him that the money would be paid back from Dart's collateral account. On November 23, 1970, Strimling executed a note to Franklin for $10,000, and Franklin issued a cashier's check to the Hopkins Nursing Home, which was owned by Strimling. This check was subsequently deposited in the Dart account. In February 1971, Strimling borrowed $15,000 from Franklin and advanced those moneys to Dart. Strimling received a promissory note from Dart for $25,000. On April 8, 1971, Strimling signed another note at Franklin renewing his $25,000 obligation.

On March 31, 1971, Ringland resigned as president and director of Franklin. Strimling alleged that in May 1971, Ringland asked him to transfer the $25,000 obligation at Franklin to Barron. Ringland was then chairman of the board at Barron. Strimling agreed to the transfer and signed a note for $25,000 to Barron on May 5, 1971. Strimling used the $25,000 he borrowed from Barron to pay off the November 1970 note for $10,000 and the February 1971 note for $15,000.

Prior to the transfer to Barron, Strimling sent a letter on May

1, 1971, to Dart in which he sought additional security from Dart for his $25,000 loan. Strimling asked that a $25,000 share of Dart stock be issued as a gift to Nursing Home Consultants, a partnership consisting of George Hedlund and Strimling. Strimling also requested that payments begin on the loan immediately. Dart did not make the requested payments but did offer a $25,000 finder's fee to Strimling if he could arrange to refinance one of the nursing homes. Strimling annotated that letter to add 6,820 shares of Dart as an additional fee. In January 1972, Dart went into bankruptcy without repaying Strimling.

The issues presented are:

(1) Was there sufficient evidence for the jury to find that Strimling waived claims of breach of contract and misrepresentation?

(2) Was there sufficient evidence for the jury to find that Ringland did not have apparent authority to represent to the defendant that he would not be liable on the promissory notes?

(3) Was the trial court correct in holding that defendant was estopped from denying liability on the loan because the loan transactions were illegal circumventions of the bank's lending limits?

(4) Was the trial court correct in holding that the agreement to relieve defendant of liability on the notes was against public policy?

■ Strimling argues that because the jury found that he reasonably relied on misrepresentations by Ringland, Strimling was unaware of these misrepresentations and could not have waived them. The jury, however, was instructed that knowledge was an essential element in waiver and found that Strimling waived each misrepresentation.

The evidence supports the jury's finding. Waiver need not be express but may be inferred from conduct. Engstrom v. Farmers & Bankers Life Ins. Co. 230 Minn. 308, 41 N. W. 2d 422 (1950). Each time Strimling executed a note subsequent to the November 1970 note, he knew that Ringland had not lived up to the promise

to satisfy the notes from Dart's account. Notwithstanding this knowledge, Strimling signed additional notes on February 16, 1971; April 8, 1971; May 5, 1971; and December 8, 1971. Renewal of a note after discovery of misrepresentation waives the misrepresentation. Thorpe v. Cooley, 138 Minn. 431, 165 N. W. 265 (1917); Wiebke v. Erickson, 189 Minn. 102, 248 N. W. 702 (1933). In addition, Strimling's conduct indicates that he was looking to Dart for repayment. In a May 1971 letter to the president of Dart, Strimling said:

"Since you encountered your overline at Franklin National Bank I have been the actual lender of $25,000 to Dart Investment Company, Inc., and on which nothing has been repaid to date. Also, up to this time, I have received nothing from you or Dart to compensate for this loan and I feel that something should be done to protect me and give some security. Therefore, in order to continue our relationship in a proper business like manner, I suggest you issue or cause to be issued, immediately, a gift to Nursing Home Consultants, a partnership, consisting of George Hedlund and Bert Strimling, $25,000 share of Dart Investment Co., Inc. stock.

"I assume, also, that payments will begin on this loan, through the Franklin National Bank, as arranged previously and that payments will begin on the Nursing Home Consultants billing immediately."

■ Since there is evidentiary support for the findings that Strimling waived the misrepresentations and contract claims, it is not necessary to consider his claims that Ringland had apparent authority to make agreements with Strimling regarding Strimling's liability on the promissory notes and that lack of apparent authority, moreover, is no defense to the tort of misrepresentation. However, the evidence supports the jury's finding that Ringland did not have such apparent authority. As of May 1971, Ringland had left Franklin and clearly had no actual or apparent authority to bind Franklin. As a director of Franklin himself,

Strimling clearly knew or should have known that another director has no authority to promise the maker of a note that he would not be obligated on it. Markville State Bank v. Steinbring, 179 Minn. 246, 228 N. W. 757 (1930).

■ The total obligations of any person to a national banking association are limited to 10 percent of the bank's unimpaired capital stock actually paid in and 10 percent of its unimpaired surplus fund. 12 USCA, § 84. Strimling admitted at trial that he entered into the transactions involved here to enable Franklin to funnel funds to Dart and circumvent the lending limit. Strimling argues that the loan from Ringland to him was not illegal because Strimling admitted that he, not Dart, was legally bound to pay the note. The illegality arises, however, not in the borrowing by Strimling but in the agreement that Dart's funds were to be used to pay off the note. Contracts which seek to effectuate results that the law seeks to prevent cannot be made the basis of a successful lawsuit. 4 Dunnell, Dig. (3 ed.) § 1885. This doctrine also has been extended to tortious transactions based on fraud or similar intentional wrongdoing. State, by Head, v. AAMCO Automatic Transmissions, Inc. 293 Minn. 342, 199 N. W. 2d 444 (1972).

■ Strimling argues that estoppel should not apply to him because he is not denying liability on the notes. He admits he was initially bound by the notes but insists that there was an agreement that they were to be paid out of Dart's collateral account. This is precisely the sort of covert agreement that this policy was intended to prevent. As this court said in German-American Finance Corp. v. Merchants' & Mfrs. State Bank of Minneapolis, 177 Minn. 529, 535, 225 N. W. 891, 893, 64 A. L. R. 582, 587 (1929):

"* * * The notes held by [a bank] as assets must be genuine and enforceable obligations of the makers thereof and not subject to hidden and secret agreements that relieve from the contract terms of written instruments."

See, also, Mount Vernon Trust Co. v. Bergoff, 272 N. Y. 192, 5 N. E. 2d 196 (1936).

We therefore hold that the record contains sufficient evidence to sustain the findings made by the jury and adopted by the court and that the trial court's conclusions of law are correct. We find no error in the rulings specified in the notices of review nor in the court's charge.

Affirmed.