HARTFORD FIRE INSURANCE COM-
PANY and ITT Comprehensive Employ-
ee Benefits Service Company, Plaintiffs,

v.

E.A. SWEEN COMPANY, E.A. Sween
Company Employee Health Protection
Plan, CS 451, Defendants and Third–
Party Plaintiffs,

v.

BLUE CROSS–BLUE SHIELD OF
MINNESOTA, Jonathan Ecker, and Ga-
meplan, Inc., Third–Party Defendants.

Civil No. 4–93–795.

United States District Court,
D. Minnesota,
Fourth Division.

March 26, 1996.

Donald E. Rysavy, John Steven Beckmann, Hoversten Strom Johnson & Rysavy, Austin, MN, Joseph Myles Musilek, Schatz Paquin Lockridge Grindal & Holstein, Minneapolis, MN, Barry A. Chasnoff, Daniel McNeel Lane, Jr., Akin Gump Hauer & Feld, San Antonio, TX, for plaintiff Hartford Fire Insurance Company.

Darcy Lynn Hitesman, Briggs & Morgan, Minneapolis, MN, Scott William Wright, Doherty Rumble & Butler, St. Paul, MN, Richard M. Dahl, Dunkley Bennett & Christensen, Minneapolis, Alan Irving Silver, Maura S. Murphy, Doherty Rumble & Butler, Minneapolis, MN, for defendant E.A. Sween Company.

Gregory Mark Weyandt, Amy Aiko Itoku, Jeanne Hvass Unger, Rider Bennett Egan & Arundel, Minneapolis, MN, for third-party defendant Blue Cross and Blue Shield of Minnesota.

DOTY, District Judge.

This matter is before the court on the cross-motions of Third–Party Defendant Blue Cross–Blue Shield of Minnesota ("BCBS") and Defendants and Third–Party Plaintiffs E.A. Sween Company and E.A. Sween Company Employee Health Protection Plan, CS 451 (collectively "Sween") for summary judgment and Plaintiffs' Hartford Insurance Company and ITT Comprehensive Employee Benefits Service Company (collectively "Hartford") motion for summary judgment against Sween. Based on a review of the file, record and proceedings herein, and for the reasons stated below, the motions of BCBS and Hartford are granted and the motion of Sween is denied.

## BACKGROUND [1]

In 1984, Sween established a self-funded medical plan (the "Plan") to provide medical benefits to employees and their dependents. The plan is a self-insured employee welfare benefits plan under the Employee Retire-

---

**1.** These facts were taken from a previous order of the court in this matter. *See Hartford Insurance Company v. E.A. Sween Company,* Civil No. 4–93–795 (D.Minn. Oct. 19, 1994) (order granting in part and denying in part Hartford's motion to dismiss).

ment Income Security Act ("ERISA"). 29 U.S.C. § 1002(1). Sween is the administrator and sponsor of the Plan. 29 U.S.C. 1002(16)(A) & (B). From 1984 through 1991 BCBS provided claims administration services to the Plan. Under the terms of the 1991 Servicing Plan Agreement ("SPA") BCBS provided claims administration services for the Plan and "stop-loss" coverage for Sween.

As claims administrator, BCBS processed and paid medical claims submitted by Plan members and Sween reimbursed BCBS for the claims it paid through automated funds transfers from Sween's bank account. Under the Specific Stop–Loss provisions of the SPA, Sween's liability was limited to first $50,000 of claims paid for each Plan member and his or her dependents for the service year. BCBS indemnified Sween for any claims Sween paid for any individual Plan member in excess of $50,000 within the service year. Under the Aggregate Stop–Loss provisions of the SPA, BCBS indemnified Sween for any claims beyond the stop-loss aggregate. The aggregate stop-loss was calculated at the beginning of the service year and was based on 120 percent of expected claims.

By virtue of Bradley Scott's employment at Sween, his dependents are beneficiaries of the Plan. On October 5, 1991, Jill Scott gave birth to premature twin girls at Rapid City Regional Hospital in Rapid City, South Dakota. The twins were transferred to the Sioux Valley Hospital ("Sioux Valley") in Sioux Valley, South Dakota. One baby died shortly after birth; Regan Scott survived but required months of medical treatment and hospitalization. The Scotts' claims for medical expenses incurred between October 1991

and April 1992 (the "Scott claim") were denied and Sioux Valley sued the Scotts.

Although unrelated to the Scott's hospitalization, in October 1991 BCBS announced it was raising its rates and fees. As a result, Sween decided to replace BCBS. After a series of meetings and negotiations, it was agreed that Hartford would provide third-party claims administration services to the Plan. On December 27, 1991, Stephen L. Hoese, senior vice president of Sween, terminated Sween's contract with BCBS effective December 31, 1991.[2] Effective January 1, 1992, Sween entered into an Employee Benefit Administration Agreement with Hartford.[3]

In December 1991, Jill Scott learned that Sween intended to switch from BCBS to Hartford. Scott contacted Hartford to verify that coverage existed beginning January 1, 1992. Scott spoke with a Hartford representative. She explained her situation and the magnitude of the Scott's medical bills. According to Mrs. Scott, Hartford allegedly assured her that coverage existed and that all hospital and medical expenses would be paid.

Sioux Valley submitted several claims to BCBS and Hartford between December 1991 and April 1992.[4] BCBS refused to pay for the Scott's medical bills, which were incurred and which it received during 1991 but which it processed on or after January 1, 1992, under the Stop–Loss provisions of the SPA. Hartford denies responsibility for medical expenses incurred by the Scotts between January and April 1992, asserting that Regan Scott was not eligible for coverage until she remained out of the hospital for 30 consecutive days. Hartford filed this action for declaratory relief on August 19, 1993, to determine the liability of the parties for payment of the Scott's medical expenses.

2. The SPA contains a notice of cancellation provision which protected BCBS. Although BCBS did not expressly waive this requirement, its waiver of this requirement was clearly manifested by its conduct in late 1991. *First Nat'l Bank of Barron v. Strimling*, 308 Minn. 207, 241 N.W.2d 478, 480 (1976) (waiver may be inferred from conduct). Additionally, Sween's admissions on the record and its own conduct demonstrate that it consented to BCBS's waiver of the cancellation requirement in the SPA.

3. Hartford also became Sween's stop-loss carrier, but that agreement is not relevant to this dispute.

4. On December 23, 1991, BCBS received claims totaling approximately $220,000 from Sioux Valley Hospital for the hospitalization of the Scotts from October 2, 1991 to December 13, 1991. The Scott's total medical expenses incurred from October 1991 through April 1992 exceeded $360,000.

## DISCUSSION

The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard mirrors the standard for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), which requires the trial court to enter judgment as a matter of law if there can be but one reasonable conclusion as to the verdict. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* at 249, 106 S.Ct. at 2510–11.

On a motion for summary judgment, the court views the evidence in favor of the nonmoving party and gives that party the benefit of all justifiable inferences that can be drawn in its favor. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, cannot rest upon mere denials or allegations in the pleadings. Nor may the nonmoving party simply argue facts supporting its claims will be developed later or at trial. Rather, the nonmoving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). An issue of material fact is genuine if it has a real basis in the record. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). If reasonable minds could differ as to the import of the evidence, judgment as a matter of law should not be granted. *See Anderson*, 477 U.S. at 250–51, 106 S.Ct. at 2511–12. With these principles in mind, the court will consider the parties motions.

## I. Blue Cross–Blue Shield of Minnesota

■ Sween alleges that BCBS was a fiduciary of the Plan. Sween asserts two theories as to why BCBS was an ERISA fiduciary: (1) BCBS, as claims administrator, was a fiduciary and owed the Plan a duty to monitor the billing and other activities of Sioux Valley and breached this duty by failing to ensure that Sioux Valley billed BCBS promptly for the Scott claim in violation of 29 U.S.C. § 1104(a)(1)(A) & (B); and (2) BCBS, as claim processor, was a fiduciary and breached its duty to Sween by failing to pay the Scott claim by December 31, 1991, in violation of 29 U.S.C. § 1106(b)(1). Sween asserts it was damaged by BCBS's failure to pay the Scott claim by December 31, 1991, because the claim was not covered under the Stop–Loss provisions of the SPA. Sween also alleges that BCBS's failure to pay the Scott claim by December 31, 1991, was negligent, breached the SPA, and constituted a bad faith denial of insurance coverage. (Sween Third Party Compl. ¶¶ XIX–XX, XXIV–XXV).

Under the terms of a Provider Service Agreement ("PSA"), Sioux Valley was a member of BCBS's preferred provider network. The PSA provided that BCBS agreed "to make payment within 30 days of receipt on at least 90 percent of eligible claims submitted via electronic media and not requiring further investigation" to Sioux Valley. (Murphy Aff.Ex. C at 1). Sioux Valley was not to submit any claim to BCBS until "after all charges and credits [had] been recorded on the account." *Id.*

Sween alleges that on October 5, 1991, BCBS learned of the premature birth of the Scott twins. Thereafter, BCBS approved medical treatment that was provided to the Scotts and was aware of the scope of their hospitalization through December 1991. On this basis, Sween contends that BCBS had actual and constructive knowledge that the Scott claim would be a significant dollar amount.

As a result of an internal billing error at Sioux Valley, BCBS did not receive the bill for the Scott's medical treatment until December 23, 1991.[5] *See* (Murphy Aff.Ex. Z). The bill Sioux Valley submitted was a com-

---

5. Although Sween alleges that the Sioux Valley mailed the bill on December 13, 1991, there is no dispute that BCBS did not receive the bill until December 23.

bined bill for the months of October, November and the first thirteen days of December. Sioux Valley did not disclose its error to BCBS and BCBS did not detect the delay. (Sween Joint Ans. at ¶ 17b).

Based on BCBS's knowledge of the Scott's hospitalization and its relationship with Sioux Valley, Sween contends that as claims administrator "there is simply no valid reason why [BCBS] waited two and one half months for [Sioux Valley] to bill for services incurred in 1991[.]" (Sween Mem. at 17). Sween asserts that BCBS's failure to properly monitor the billing practices of Sioux Valley, a member of its provider network, was a breach of duty. Additionally, Sween alleges that when BCBS received the bill on December 23, 1991,, it was payable and therefore should have been paid by December 31, 1991. BCBS failure to pay the Scott claim by December 31, 1991,, in its capacity as claims processor, constituted a separate breach of duty by BCBS.

BCBS believes that Sween's real contention is that BCBS purposely delayed payment of the Scott claim. (BCBS Mem. at 12). BCBS argues, however, that neither its contractual relationship with Sioux Valley nor its contractual relationship with Sween was sufficient as a matter of law to make it an ERISA fiduciary. BCBS further argues that there is no factual support for Sween's arguments because under the plain terms of the Stop–Loss provisions of the SPA it is not liable for the Scott's medical expenses.

## A. ERISA

### 1. Claims Administrator

Sween is an ERISA fiduciary because it is the Plan administrator and sponsor. (Hartford Compl.Ex. A at 21–23); (Murphy Aff. Ex. A at ¶ 13). As a fiduciary, Sween is entitled to seek equitable relief against entities who breach their duty to the Plan. 29 U.S.C. § 1132(a)(3)(B). Sween seeks to recover payment of the Scott claim from BCBS.[6] To recover against BCBS for breach of fiduciary duty, Sween must first

establish that BCBS was an ERISA fiduciary under 29 U.S.C. § 1002(21)(A).

"Discretion is the benchmark for fiduciary status under ERISA." *Maniace v. Commerce Bank of Kansas City,* 40 F.3d 264, 267 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1964, 131 L.Ed.2d 854 (1995). ERISA provides that a person:

is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary control respecting management of such plan or ... disposition of its assets or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Although the language of the statute is quite broad, the Eighth Circuit has stated that a fiduciary is "liable only 'to the extent' he exercises discretionary control, renders investment advice, or has discretionary administration responsibility." *Kerns v. Benefit Trust Life Ins. Co.,* 992 F.2d 214, 216 (8th Cir.1993).

The SPA states that "BCBS will have discretionary authority to determine eligibility for benefits or to construe the provisions of the Plan Document." (Murphy Aff.Ex. A at ¶ 13). Cheryl Steffes, a BCBS employee, testified that: (1) BCBS was responsible for processing claims; (2) all claims were submitted directly to BCBS; (2) BCBS decided whether claims were covered under the Plan; (3) BCBS explained to Plan participants why claims were rejected; (4) appeals of claim denials were filed with and reviewed by BCBS. (Silver Aff.Ex. 2 at 29–33). BCBS also granted and denied claims without consulting with Sween, reviewed all requests for anticipated claims and approved all hospital stays. *Id.* Sween argues that the language of the SPA combined with the conduct of BCBS, as testified to by Steffes, demonstrates that BCBS exercised discretion over the Plan as a fiduciary. As a fiduciary, Sween argues that BCBS had a duty to monitor Sioux Valley.

BCBS disagrees with the degree of discretion Sween asserts it exercised as claims administrator, but for purposes of this mo-

---

**6.** The court construes Sween's prayer for relief as seeking restitution from BCBS and not damages which are not available under § 1132(a)(3).

*See Witt v. Allstate Ins. Co.,* 50 F.3d 536, 538 (8th Cir.1995).

tion does not dispute Sween's assertions. (BCBS Reply Mem. at 5). Nonetheless, BCBS argues that even assuming it was an ERISA fiduciary with respect to claims handling, it was not a fiduciary with respect to the function at issue in this case, ensuring Sioux Valley billed BCBS promptly for services provided to Plan participants. *Id.* Thus, BCBS argues: (1) its contractual relationship with Sioux Valley did not create any fiduciary obligations between it and the Plan; and (2) any fiduciary duties it owed the Plan did not include the duty of monitoring Sioux Valley's billing procedures.

The PSA defines the relationship between Sween and Sioux Valley; the SPA defines the relationship between Sween, the Plan, and BCBS. The SPA and PSA were separate documents which created independent duties and obligations. Thus, if the SPA did not create a fiduciary relationship between BCBS and the Plan, then BCBS would have had no obligation to ensure Sioux Valley remitted its bills promptly.

■ Sween purchased group insurance policies under which BCBS was the claims processor. (Hartford Compl.Ex. A at 23). BCBS was not an ERISA fiduciary simply because it handled claims under Sween's group policy, however. *Kerns,* 992 F.2d at 216. While an insurer such as BCBS has a contractual obligation to pay valid claims, an insurer is typically not acting in a fiduciary capacity when handling benefit claims. *Id.* An essential statutory responsibility of an ERISA fiduciary is to "discharge his duties with respect to the plan *solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of ... providing benefits* to participants and their beneficiaries." *Id.* (citing 29 U.S.C. § 1104(a)(1) (emphasis in original). Although BCBS had a contractual duty under the SPA to pay valid claims, the performance of its duties was not "for the exclusive purpose of providing benefits" as required by ERISA. *Id.* Thus, Sween's blanket argument that BCBS's contractual obligations under the SPA made it an ERISA fiduciary does not fit the plain language of the statute. *See id.*

■ The obligation as a fiduciary pertains only to the discretion created. *Kerns,* 992

F.2d at 216. A third-party claims administrator might incur fiduciary obligations as a plan administrator or where it is the person to which a claimant appeals a denied claim. *See Kerns,* 992 F.2d at 216 (citing 29 C.F.R. § 2560.503–1(g) (stating insurance company performing review function appropriate named fiduciary for purposes of this section)). BCBS is not the Plan's administrator. *See* (Hartford Compl.Ex. A at ¶ 13). Moreover, BCBS did not deny the Scott claim; it paid the claim. Thus, BCBS's discretion with respect to granting, denying or reviewing claims within the claims process is not at issue in this case.

Although BCBS may have had discretion to grant or deny benefit claims, it had no discretionary control under the SPA to compel Sioux Valley to submit its claims in a timely manner. The relationship between BCBS and Sioux Valley was purely contractual. Sioux Valley agreed to submit a claim to BCBS only after all charges and credits had been recorded on the account. (Murphy Aff.Ex. C at 1). BCBS agreed to make payment within 30 days of receipt of 90 percent of eligible claims not requiring further investigation. *Id.* Because BCBS had no discretionary control over Sioux Valley, BCBS had no fiduciary obligation to ensure Sioux Valley billed promptly.

Sween argues that because BCBS exercised some discretion with respect to claims processing BCBS was a fiduciary with respect to all aspects of the plan. (Sween Mem. at 21–25). This the same argument the Eighth Circuit rejected in *Kerns.* Proving that BCBS's grant or denial of benefit claims were discretionary acts of a § 1002(21)(A) fiduciary did not impose on BCBS the separate duty of monitoring Sioux Valley. *See Kerns,* 992 F.2d at 217.

■ Fiduciary status under § 1002(21)(A) is not "an all-or-nothing concept.... [A] court must ask whether a person is a fiduciary with respect to the particular activity in question." *Kerns,* 992 F.2d at 217 (citing *Coleman v. Nationwide Life Ins. Co.,* 969 F.2d 54, 61 (4th Cir.1992), *cert. denied,* 506 U.S. 1081, 113 S.Ct. 1051, 122 L.Ed.2d 359

(1993)).[7] Even if BCBS was a fiduciary with respect to claims handling, it was not a fiduciary with respect to the function at issue in this case, ensuring that a third-party provider billed promptly. BCBS's contractual obligation under the PSA to make payment on claims submitted to it by Sioux Valley did not create a fiduciary relationship between BCBS and the Plan. Moreover, because the SPA did not create a pre-existing fiduciary relationship between BCBS and the Plan with respect to the function at issue, ensuring that Sioux Valley remitted its claims promptly, BCBS could not have breached a duty it never owed to the Plan.[8]

## 2. Claims Processor

■ Sween also argues that as claims processor BCBS was a Plan fiduciary. Sween argues that it was within BCBS's discretion when to pay the Scott claim after it was received on December 23, 1991. Because BCBS had this discretion, it was an ERISA fiduciary. Sween believes that if BCBS paid the Scott claim before December 31, 1991, it would have been covered by the Stop–Loss provisions of the SPA. By failing to pay the claim by December 31, 1991,, BCBS breached its duty to the Plan.

Sween's syllogistic argument is based on the flawed premise that liability turns on whether BCBS paid the Scott claim before or after December 31, 1991. It does not. Whether BCBS had discretion to pay the Scott claim by December 31, 1991, and when

7. *See also* 29 C.F.R. § 2509.75–8, FR–16 (1994) (personal liability of a fiduciary limited to functions performed with respect to the plan); 29 C.F.R. § 2509.75–8, FR–13 (1994) (named fiduciaries will not be liable for acts and omissions properly allocated to other fiduciaries); 29 C.F.R. § 2509.75–8, D–4 (1994) (liability of fiduciary limited to scope of fiduciary duty).

8. Sween has asserted that under the PSA BCBS had a duty to ensure that Sioux valley billed BCBS promptly. Sween has admitted, however, that BCBS never knew of, and Sioux Valley never disclosed, its billing error concerning the Scott claim. (Sween Mem. at 3); Joint Ans. at ¶ 17b). Exhibit Z to the Affidavit of Maura S. Murphy is a letter from Stephen Hoese, Senior Vice President of Sween, to Thomas Seifert at BCBS. In the letter Hoese states:

[Kathy] Beckman telephoned [Sioux Valley] on January 6, 1991 and talked to the supervisor of

the claim was paid are irrelevant. Liability for the Scott claim is dictated by the terms of the SPA, not the actions of BCBS.

The Plan had sole responsibility for all liability resulting from the SPA, except that BCBS was liable for excess claims occurring under the Stop–Loss provisions in the agreement. (Murphy Aff.Ex. A at 1). Paragraphs 4 through 7 of the SPA, which are not at issue, outline BCBS's billing protocol. Paragraphs 8A and 8B, the Stop–Loss provisions of the SPA at issue in this case, state in relevant part:

A. Specific Stop–Loss

The Plan's liability will be limited to $50,000 of claims paid for each Plan member and his or her Dependents for each Servicing Year.... Paid claims in excess of this amount will be BCBSM's responsibility.

.    .    .    .    .

Any amount in excess of the Specific Stop–Loss paid by BCBSM *will be excluded* from the calculation of the Actual Annual Aggregate Stop–Loss.

.    .    .    .    .

Claims received by BCBSM *with all necessary information at least 60 business days prior to the end of the Servicing Year* will be included in the calculation of paid claims for the Servicing Year regardless of the actual date.

the accounting department. She asked why the October and November charges had not been billed *when she was told they had been.* The supervisor stated that someone had *errored* [sic] and normally bills were submitted monthly. *In this case the doctor hadn't completed the necessary forms for Blue Cross to process the bill.* (Emphasis added).

Taking Sween's admissions and Hoese's letter together, Sween apparently believes that the SPA created an agency relationship which not only obligated BCBS to monitor Sioux Valley's internal operations, but also obligated BCBS to investigate and remedy any misfeasance committed by Sioux Valley. (Sween Mem. at 27). Neither the terms of the SPA nor the parties conduct suggest that as claims administrator BCBS was Sween's agent. *See Witt*, 50 F.3d at 537 (insurer as claims handler not ERISA plan agent).

### B. Aggregate Stop–Loss

The Plan's liability will be limited[.]  ...  In no event will the Actual Aggregate Stop–Loss be less than $1,055,100. (Emphasis added).

Paragraph 9 describes what would happen in the event the SPA was terminated. If it was terminated, the Specific and Aggregate Stop–Loss would apply regardless of the number of months in the Final Servicing Year. Any claims paid by BCBS after the date of termination, however, were not included in either Stop–Loss calculation. (Murphy Aff.Ex. A at ¶ 9).

The court has reviewed the language of the SPA and finds that it is clear and unambiguous. BCBS is not liable under the Specific Stop–Loss because the Scott claim was not received by BCBS with all necessary information 60 business days prior to December 31, 1991. BCBS is also not liable under the Aggregate Stop–Loss. Paragraph 8 states that any claims over $50,000 for any Plan member is not included in the Aggregate Stop–Loss. Thus, although Sween's liability under the Aggregate Stop–Loss is capped at approximately $1,000,000, this amount is comprised of the first $50,000 of each Plan member's claims. Once the Aggregate Stop–Loss is reached two things occur: (1) BCBS is liable for the first $50,000 of any claims for any Plan member; and (2) any claims in excess of $50,000 by any Plan member remain subject to the Specific Stop–Loss which requires the claims to be received by BCBS 60 business days prior to the end of the Servicing Year to be included in the Stop–Loss calculation.

Even if BCBS had paid the claim by December 31, 1991, it would not relieve Sween of liability for the Scott's medical expenses under the Stop–Loss provisions of the SPA. Thus, liability for the Scott claim is not dependant on any discretionary control BCBS might have had as claims processor; liability was established when BCBS received the claim on December 23, 1991. Moreover,

BCBS's obligation to pay claims submitted to it by Sioux Valley does not suggest that BCBS performed this function "for the exclusive purpose of providing benefits" as ERISA requires of a fiduciary.

In this case, BCBS did nothing more than perform its normal contractual claims handling function that was part of Sween's ERISA plan. Neither the SPA, the PSA, nor the plain language of ERISA support the conclusion that BCBS was "a fiduciary with respect to a plan" under § 1022(21)(A). Accordingly, the court concludes that BCBS was not an ERISA fiduciary to the Plan in either its capacity as claims administrator or claims processor.[9]

### B. State Law Claims

■ The pre-emption clause of ERISA, 29 U.S.C. § 1144(a), "is conspicuous for its breadth." *FMC Corp. v. Holliday*, 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). "It establishes as an area of exclusive federal concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA." *Id.* Given ERISA's broad pre-emption provisions, state law claims for improper claims administration are pre-empted. *Consolidated Beef Indus. v. New York Life Ins.*, 949 F.2d 960, 963 (8th Cir.1991), *cert. denied*, 503 U.S. 985, 112 S.Ct. 1670, 118 L.Ed.2d 390 (1992). Although not raised by either party, the court finds that Sween's claims for breach of contract, negligence and bad faith denial of insurance coverage, which arise directly from the administration of the Plan, are preempted by ERISA.

The Supreme Court and the Eighth Circuit have noted the breadth of ERISA's preemption clause on numerous occasions and have consistently held the clause serves to preempt claims arising under state law. *See, e.g., FMC Corp.*, 498 U.S. 52, 111 S.Ct. 403 (1990); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Kuhl v. Lincoln Nat. Health Plan*, 999 F.2d

---

**9.** Sween separately argues that it has stated a claim under 29 U.S.C. § 1104(a), which sets forth the so-called "prudent man standard of care" in defining fiduciary duties under ERISA. (Sween Mem. at 25–26). The court rejects this argument because § 1104 cannot independently support a claim of breach of fiduciary duty where such a claim is not stated under § 1132(a). *Slice v. Sons of Norway*, 34 F.3d 630, 633 (8th Cir.1994).

298 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994) (intentional infliction of emotional distress, medical malpractice, breach of contract and intentional interference with contract rights); *Consolidated Beef Indus.,* 949 F.2d 960 (8th Cir.1991) (misrepresentation, breach of contract, implied warranties and fraudulent representation). "A negligence or breach of contract action may arise in a variety of contexts where insurance is involved, but where ERISA is implicated, ERISA provides the exclusive remedy." *Independent Bankers v. United of Omaha Life Ins.,* 902 F.Supp. 192, 195 (D.S.D.1994). Sween's claims are preempted even though it has no ERISA fiduciary remedy. *See Consolidated Beef,* 949 F.2d at 964.

## II. Hartford

Hartford received the claims for the Scott's medical expenses on January 13, 1992. Kathy Beckman, Sween's employee benefits administrator, directed Hartford not to pay these claims. After Hartford had filed this declaratory judgment action, the Scott's asserted five counterclaims against Hartford based on Hartford's denial of their medical claims. In an October 19, 1994, order, this court dismissed six of the Scott's seven counter-claims. The Scott's only remaining claim is one for breach of fiduciary duty under ERISA, which the Scotts have assigned to Sween. Sween asserts three independent theories of recovery against Hartford: (1) breach of contract, (2) misrepresentation, and (3) negligent negotiation.

### A. ERISA

■ In the claim assigned to Sween, the Scotts allege that Hartford is a plan fiduciary under ERISA and breached its fiduciary duties in violation of 29 U.S.C. § 1109. (Scott Ans. ¶¶ 25–27). The Scotts seek damages for Hartford's allege breach of fiduciary duties for "unreimbursed medical expenses, mental anguish and suffering, injury to reputation, costs, disbursements, and attorneys

fees." (Scott Ans. ¶ 27). The Scotts allege that they have been damaged by Hartford's alleged breach even though they have been reimbursed for all their medical expenses.

Hartford's response to the Scott's claim is two-fold. First, it contends that it is not a fiduciary under ERISA. Second, it argues that assuming it is an ERISA fiduciary the money damages the Scotts seek are not available under ERISA.

In its October 19, 1994, order, this court stated that it could not determine whether Hartford is a fiduciary under ERISA as a matter of law based on the sufficiency of the pleadings. Assuming, without deciding whether Hartford is a fiduciary, the Scotts' claim fails to state a cause of action under ERISA as a matter of law because damages are not available under ERISA.

The causes of actions available to an ERISA participant are exclusively listed in 29 U.S.C. § 1132(a). Assuming Hartford was an ERISA fiduciary, the Scott's allegations do not state a cause of action under ERISA because only equitable relief, as opposed to monetary damages, is available under ERISA. *Novak v. Andersen Corp.,* 962 F.2d 757, 759 (8th Cir.1992), *cert. denied,* 508 U.S. 959, 113 S.Ct. 2928, 124 L.Ed.2d 678 (1993). *See also Mertens v. Hewitt Assocs.,* 508 U.S. 248, 255–56, 113 S.Ct. 2063, 2068, 124 L.Ed.2d 161 (holding damages do not constitute "other equitable relief"). Unreimbursed medical expenses, mental anguish and suffering and injury to reputation are not, by any stretch of the imagination, equitable relief. *See* (Scott Ans. ¶ 27). "Damages are damages, and an award of damages is a legal, not an equitable, remedy." *Novak,* 962 F.2d at 761.[10]

### B. State Law Claims

■ Sween has asserted four counterclaims against Hartford. Sween claims that Hartford: (1) breached the Individual Excess Risk Insurance Agreement ("ISL") issued to

---

**10.** The Supreme Court recently held that individual beneficiaries injured by a breach of fiduciary duty have a cause of action for equitable relief for their own benefit under 29 U.S.C. § 1132(a)(3). *Varity Corp. v. Howe,* —— U.S.

——, 116 S.Ct. 1065, —— L.Ed.2d —— (1996). The Scott's are not seeking equitable relief. Thus, *Varity Corp.* does not change the court's analysis.

**1030**

Sween on March 27, 1992, by "failing to apply the amount of the Regan Scott claims incurred from January through April 1992 against the individual and aggregate deductibles for the 1992 service year"; (2) misrepresented that Sween would experience no gap in stop-loss coverage after Sween terminated its agreement with BCBS; (3) misrepresented the terms and conditions of Hartford's stop-loss coverage; and (4) negligently negotiated the terms and conditions of the stop-loss coverage. Hartford contends that it did not breach the ISL, it made no misrepresentations concerning the stop-loss coverage, and owed no duty to Sween on which to base a cause of action for negligence.

As stated previously, every state law that "relate[s] to" an employee benefit plan are preempted by ERISA. *FMC Corp.*, 498 U.S. at 52, 111 S.Ct. at 403. The Eighth Circuit has noted the breadth of ERISA's preemption clause on numerous occasions and has consistently held that ERISA preempts state law claims for improper claims administration. *See, e.g., Kuhl*, 999 F.2d at 301–04; *Consolidated Beef Indus.*, 949 F.2d at 963–64. Sween's claims in this case, such as the scope of the stop-loss coverage and whether the Scott claim is excluded from coverage, arise directly from administration of the Plan. Additionally, even if Sween's claims involve the sale of the insurance policy offered by Hartford, its claims still relate to the Plan. *Consolidated Beef Indus.*, 949 F.2d at 964. Thus, the court finds that Sween's claims for breach of contract, misrepresentation and negligence against Hartford "relate to" an employee benefit plan and are therefore preempted by ERISA.

## CONCLUSION

BCBS was not a Plan fiduciary pursuant to 29 U.S.C. § 1002(21)(A) and Sween's state law claims against BCBS are preempted by ERISA. The Scott's claim for breach of fiduciary duty against Hartford fails to state a cause of action under ERISA and Sween's state law claims against Hartford are preempted by ERISA. The court concludes that there are no genuine issues of material fact and that BCBS and Hartford are entitled to judgment as a matter of law. Accordingly, **IT IS HEREBY ORDERED** that:

1. The motion for summary judgment by defendants and third-party plaintiffs E.A. Sween Company and E.A. Sween Company Employee Health Protection Plan CS 451 against third-party defendant Blue Cross–Blue Shield of Minnesota is denied;

2. The motion for summary judgment by third-party defendant Blue Cross–Blue Shield of Minnesota against defendants and third-party plaintiffs E.A. Sween Company and E.A. Sween Company Employee Health Protection Plan CS 451 is granted;

3. The motion of for summary judgment by plaintiffs Hartford Fire Insurance Company and ITT Comprehensive Employee Benefits Service Company against defendants and third-party plaintiffs E.A. Sween Company and E.A. Sween Company Employee Health Protection Plan CS 451 is granted;

4. The motion for summary judgment by plaintiffs Hartford Fire Insurance Company and ITT Comprehensive Employee Benefits Service Company with respect to Count 2 of defendants Bradley A. and Jill R. Scott's Counterclaim which has been assigned to defendants and third-party plaintiffs E.A. Sween Company and E.A. Sween Employee Health Protection Plan CS 451 is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**