**BOARD OF TRUSTEES OF the WEST-
ERN LAKE SUPERIOR PIPING IN-
DUSTRY PENSION FUND, Plaintiff,**

v.

**AMERICAN BENEFIT PLAN
ADMINISTRATORS, INC.,
Defendant.**

Civ. No. 5–94–146.

United States District Court,
D. Minnesota,
Fifth Division.

April 11, 1996.

**1426**

Kenneth D. Butler, Duluth, MN, for plaintiff.

Daniel A. Beckman, Minnetonka, MN, for defendant.

### MEMORANDUM ORDER

ERICKSON, United States Magistrate Judge.

#### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to the consent of the parties, as authorized by Title 28 U.S.C. § 636(c)(3), upon the Defendant's Motion for Summary Judgment.

A Hearing on the Motion was conducted on October 12, 1995, at which time the Plaintiff appeared by Kenneth D. Butler, Esq., and the Defendant appeared by Daniel A. Beckman, Esq.

For reasons which follow, we grant the Defendant's Motion.

#### II. *Factual and Procedural History*

The Plaintiff has been appointed to administer a series of employee benefit plans that are collectively referred to as the Western Lake Superior Piping Industry Pension Fund ("Fund"). The Defendant is a California corporation which performs administrative services on behalf of welfare and defined benefit plans, such as those which constitute the Fund. On or about October 24, 1989, the Plaintiff and the Defendant entered into an administrative services agreement ("Agreement"), whereby the Defendant agreed to perform certain, designated administrative services on behalf of the Fund.

The Plaintiff alleges that the Defendant breached the terms of this Agreement by failing or refusing to perform certain services that were contractually required of it. Specifically, the Plaintiff alleges that the Defendant agreed to convert the Fund's business records from a manual to a computerized system, but that the Defendant failed to perform this responsibility in a satisfactory fashion. As a consequence, the Plaintiff alleges that the Defendant was unable to balance the records of the Fund's participants for the 1989 calendar year, and was also unable to balance the records of the employer contributions to the Fund for the fiscal year. Accordingly, in October of 1990, the Plaintiff terminated the Defendant's services. In addition, the Plaintiff alleges that, after the Defendant's termination, it discovered that the Defendant had incorrectly posted the contributions of the Fund's participants, that the Defendant had failed to reconcile the monthly totals, which had been posted to the participant's accounts, with the deposit totals for the month and year. According to the

Plaintiff, in order to correct these mistakes, the Fund was obliged to incur substantial professional expenses for actuarial, legal, accounting and administrative services.

■ On or about October 17, 1994, the Plaintiff commenced this action in the Minnesota District Court for St. Louis County, which solely alleged a State law claim for breach of contract, and which sought monetary damages in the amount of $27,817. On November 18, 1994, the Defendant removed the action to this Court, on the ground that the issues were preemptively governed by the Employee Retirement and Income Security Act of 1974, as amended, Title 29 U.S.C. § 1001 *et. seq.* ("ERISA"). Thereafter, on September 13, 1995, the Defendant filed its Motion for Summary Judgment, which contends that ERISA preempts the Plaintiff's State law breach of contract claim. The Plaintiff implicitly concedes that its State law contract claim has been preempted by ERISA,[1] but it argues, nevertheless, that the Defendant is liable to it, in money damages, because of the Defendant's status as an ERISA fiduciary.[2] The Defendant responds

1. Unquestionably, the Plaintiff's breach of contract claim, under the State laws of Minnesota, is preempted by ERISA given the statute's broad preemption provision, which "supersed[es] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan * * *." *Title 29 U.S.C. § 1144(a).* As the Supreme Court observed, in *FMC Corp. v. Holliday*, 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990):

   The pre-emption clause is conspicuous for its breadth. It establishes as an area of exclusive federal concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA.

   See also, *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987).

   Given this congressionally-intended degree of expansiveness, the Supreme Court has defined " 'relate[s] to' a benefit plan in the normal sense of the phrase, if it has a 'connection with or reference to such a plan.' " *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985), quoting *Shaw v. Delta Air Lines*, 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983).

   As a consequence, our Court of Appeals has declared that, "[g]iven ERISA's broad pre-emption provision, state law claims for improper plan administration are pre-empted." *Consolidated Beef Industries v. New York Life Ins.*, 949 F.2d 960, 963 (8th Cir.1991), cert. denied, 503 U.S. 985, 112 S.Ct. 1670, 118 L.Ed.2d 390 (1992); see also, *Hartford Fire Ins. Co. v. E.A. Sween Co.*, 920 F.Supp. 1021 (D.Minn.1996). In *Consolidated Beef*, the Plaintiff sought to pursue State claims against the Defendant, alleging faulty administration of a Section 401(k) plan. These claims included a series of administrative errors that involved inaccurate billings, the incorrect calculation of interest rates, and the lack of annual statements to the participants of the plan. The Court held that these claims "relate[d] to" an employee benefit plan and were, therefore, preempted. *Consolidated Beef Industries v. New York Life Ins.*, supra at 964.

   Similarly, in *Walker v. National City Bank of Minneapolis*, 18 F.3d 630, 632 (8th Cir.1994), the Court reiterated that, "if the claim is one for state law breach of contract, the claim is preempted by ERISA." Accordingly, the Plaintiff's breach of contract claim, since it has solely been founded upon State law, is preempted by ERISA and, as a matter of law, is legally unavailing.

2. Any entity, who is a fiduciary of an employee benefit plan governed under ERISA, and "who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by [ERISA] shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, * * *." *Title 29 U.S.C. § 1109(a).* Here, it is undisputed that the Fund is an employee benefit plan that is governed by the terms of ERISA.

In view of our conclusion, that the Plaintiff's Complaint fails to state a claim that has not been preempted by ERISA, we would be inclined to end our analysis at this stage, since no other cognizable cause of action has been pled. Notwithstanding the allegations of the Defendant's Answer, which provided clear notice of the Defendant's assertion, that the Plaintiff's State law breach of contract claim was barred by ERISA, the Plaintiff has made no effort to amend its Complaint, during the ensuing ten-month period prior to the filing of the Defendant's Motion for Summary Judgment, nor at any time thereafter.

Nevertheless, in the interests of completeness and of fundamental fairness, we address the Plaintiff's contention, that the Defendant breached an ERISA-imposed fiduciary duty, as the Defendant has, in part, premised its Motion for Summary Judgment on the legal insubstantiality of such an argument, and can claim no prejudice in our treating the issue as having been formally pled. In according the Plaintiff such a favorable reading of its Complaint, we expressly limit our analysis to those arguments that have been joined, otherwise we would be casting ourselves in the impermissible role of advocating claims which the Plaintiff has failed to advance in its own right. Notwithstanding this indulgence, we would strongly commend the service and filing of a proper pleading, which plainly delineates the

that it did not owe a fiduciary duty to the Fund—within the meaning of ERISA—and that, therefore, it is entitled to the entry of Summary Judgment.

### III. *Discussion*

A. *Standard of Review.* We are mindful that Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence and in rendering credibility determinations. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the non-moving party, and we have found no triable issue, and the Plaintiff has not identified any genuine issue of material fact which would preclude the entry of Summary Judgment. *Cram v. Lamson & Sessions Co.,* 49 F.3d 466, 471 (8th Cir.1995); *Barnard v. Jackson County, Missouri,* 43 F.3d 1218, 1223 (8th Cir.1995), cert. denied, —— U.S. ——, 116 S.Ct. 53, 133 L.Ed.2d 17 (1995). For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a verdict for the non-moving party. See, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Churchill Business Credit Inc., v. Pacific Mutual Door Co.,* 49 F.3d 1334, 1336 (8th Cir.1995); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66–67 (8th Cir.1994).

As Rule 56(e), *Federal Rules of Civil Procedure,* makes clear, once the moving party files a properly supported Motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an adverse party may not rest upon the mere allegations

or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *Rule 56(e), Federal Rules of Civil Procedure; Krenik v. County of Le Sueur,* 47 F.3d 953, 957 (8th Cir.1995); *State of Nebraska ex rel. Nelson v. Central Interstate Low–Level Radioactive Waste Commission,* 26 F.3d 77, 80 (8th Cir.1994), cert. denied, —— U.S. ——, 115 S.Ct. 483, 130 L.Ed.2d 395 (1994).

Moreover, a Defendant is entitled to Summary Judgment where a Plaintiff has failed "to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* supra 477 U.S. at 322, 106 S.Ct. at 2552; *St. Paul Fire & Marine Ins. Co. v. Federal Deposit Ins. Corp.,* 968 F.2d 695, 699 (8th Cir.1992). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of [the Plaintiff's] case necessarily renders all other facts immaterial." *Id.,* 477 U.S. at 323, 106 S.Ct. at 2552; *Fischer v. NWA, Inc.,* 883 F.2d 594, 599 (8th Cir.1989), cert. denied, 495 U.S. 947, 110 S.Ct. 2205, 109 L.Ed.2d 531 (1990).

B. *Legal Analysis.* As noted, in opposing the Defendant's Motion, the Plaintiff asserts that the Defendant owed it a fiduciary duty, which was imposed by the provisions of ERISA, and which, through mismanagement, the Defendant had breached. In this respect, the Plaintiff does not argue that the Defendant was a "named fiduciary" of the Fund[3] but, rather, it contends that the fiduciary duty arises from the Defendant's exercise of discretionary authority in administering the Fund. We disagree.

1. *Standard of Review.* Under ERISA, even where—as here—an entity is not specifically designated as a fiduciary in a covered plan, that entity may be bound by a

---

bases of a claimant's causes of action, if that claimant is truly interested in seeking relief on any such claim. By joining the issue, we conclude that the Defendant has waived any objection to the absence of a formally amended Complaint.

3. ERISA provides that a written employee benefit plan instrument shall identify "one or more named fiduciaries." *Title 29 U.S.C. § 1102(a)(1).*

fiduciary's standard of care, if "[1] he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, * * * or * * * [2] he has any discretionary authority or discretionary responsibility in the administration of such plan." *Title 29 U.S.C. § 1002(21)(A)*. As should be clear, the first proviso "imposes fiduciary status on those who exercise discretionary authority, regardless of whether such authority was granted," while the second proviso "describes those individuals who have actually been granted discretionary authority, regardless of whether such authority is ever exercised." *Olson v. E.F. Hutton*, 957 F.2d 622, 625 (8th Cir.1992).

■ Stated somewhat differently, the first proviso "imposes fiduciary duties only if one exercises *discretionary* authority or control over plan *management*, but imposes those duties *whenever* one deals with plan *assets*." *Firstier Bank, N.A. v. Zeller*, 16 F.3d 907, 911 (8th Cir.1994), cert. denied, —— U.S. ——, 115 S.Ct. 194, 130 L.Ed.2d 126 (1994) [emphasis in original]. "This distinction is not accidental—it reflects the high standard of care trust law imposes upon those who handle money or other assets on behalf of another." *Id.*

■ Nevertheless, the performance of "purely ministerial functions" does not, within the framework of ERISA, entail discretionary authority or responsibility. *Kerns v. Benefit Trust Life Insurance Co.*, 992 F.2d 214, 217–18 (8th Cir.1993); *Anoka Orthopaedic Associates, P.A. v. Lechner*, 910 F.2d 514, 517 (8th Cir.1990); *29 C.F.R. § 2509.75-5, D–2.* "Clearly, discretion is the benchmark for fiduciary status under ERISA." *Maniace v. Commerce Bank of Kansas City*, 40 F.3d 264, 267 (8th Cir.1994), cert. denied, —— U.S. ——, 115 S.Ct. 1964, 131 L.Ed.2d 854 (1995). Moreover, fiduciary status, under Section 1002(21)(A), "is not an 'all or nothing concept[,] [for] a court must ask whether a person is a fiduciary with respect to the particular area in question.'" *Id.*, citing *Kerns v. Benefit Trust Life Insurance Co.*, supra at 217.

■ 2. *Legal Analysis.* The Defendant urges that, in accordance with the express terms of the Agreement that it entered with the Plaintiff, the functions it performed, in administering the Fund, were "purely ministerial" and, therefore, did not give rise to any fiduciary obligations to the Plaintiff. We agree.

Here, the operative Agreement is composed of two parts—the Agreement itself, together with a "Schedule of Services" which is appended as an Exhibit. The text of the Agreement confirms that the Defendant held little discretion in administering the Fund but, instead, operated under the strict supervisory instructions of the Plaintiff. In the words of the Agreement, the Defendant was "exclusively" responsible for performing the services listed in Exhibit A but, "[i]n performing [those] services * * *, [the Defendant] shall follow the written instructions from [the Plaintiff] regarding the benefits afforded by the FUND." *Defendant's Exhibit 1*, at Pg. 1, ¶¶ 1.1–1.2. Further, the Agreement excuses the Defendant from any responsibility "for consulting services, legal services, investment services, professional accounting services, [or for] collection services (other than as stated in Exhibit "A")." *Id.*, at Pg. 1, ¶ 1.3. Finally, to assure strict adherence to the directives of the Plaintiff, the Agreement further provided that the Defendant would "be liable to the FUND for any acts or omissions which it performs which are not in compliance with the written instructions submitted to the [Defendant] by the [Plaintiff]." *Id.*, at Pg. 1, ¶ 2.1. Clearly, the parties' Agreement did not allow the Defendant such discretion, as would be compatible with the general imposition of fiduciary obligations, nor has the Plaintiff drawn our attention to any apposite authority which, under paralleling circumstances, imposes such obligations either generally or—as specifically pertinent here—in relation to an administrator's implementation of a computerized system of accounting.

■ Our conclusion—that the Defendant did not owe a fiduciary duty to the Fund in the development of a computerized system of recordkeeping—is further bolstered by the Schedule of Services that is appended to the

parties' Agreement. Our appraisal of the discretionary character, if any, of this specific listing of the Defendant's responsibilities, is guided by an interpretive bulletin, which has been promulgated by the Department of Labor ("DOL"), and which enunciates the DOL's interpretation of Title 29 U.S.C. § 1002(21)(A), as follows: [4]

Q: Are persons who have no power to make any decisions as to plan policy, interpretations, practices or procedures, but who perform the following administrative functions for an employee benefit plan, within a framework of policies, interpretations, rules, practices and procedures made by other persons, fiduciaries with respect to the plan:

(1) Application of rules determining eligibility for participation or benefits;

(2) Calculation of services and compensation credits for benefits;

(3) Preparation of employee communication material;

(4) Maintenance of participants' service and employment records;

(5) Preparation of reports required by government agencies;

(6) Calculation of benefits:

(7) Orientation of new participants and advising participants of their rights and options under the plan;

(8) Collections of contributions and application of contributions as provided in the plan;

(9) Preparation of reports concerning participants' benefits;

(10) Processing of claims; and

(11) Making recommendations to others for decisions with respect to plan administration?

A. No. Only persons who perform one or more of the functions described in [Section 1002(21)(A) ] with respect to an employee benefit plan are fiduciaries. Therefore, a person who performs purely ministerial functions such as the types de-

scribed above for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary because such person does not have discretionary authority or discretionary control respecting management of the plan, does not exercise any authority or control respecting management or disposition of the assets of the plan, and does not render investment advice with respect to any money or other property of the plan and has no authority or responsibility to do so.

*29 C.F.R. § 2509.75–8, D–2.*

Without exception, the Schedule of Services lists job responsibilities for the Defendant that are generically coincident with the purely ministerial functions that are described in the DOL's interpretive bulletin. Illustrative of this point are the following scheduled services:

1. Answer all telephone calls, correspondence or personal inquiries with respect to the requirements and procedures of the Plan. This includes but is not limited to the procedure for remittance of employer contributions, explanation of pension benefits and eligibility and procedure for submission of pension applications.

2. Prepare Summary Annual Report and arrange for the printing and distribution of all forms required in the administration of the Pension Plan, and for the distribution of booklets and other descriptive literature to participating employers and employees.

3. Prepare and distribute annual notices to participants of the Pension and Annuity Plans advising them of hours worked along with pension credits.

4. Establish and maintain for each reported member a work record, which reflects the total amount of past and future pension credits as accumulated under the rules of the Plan. These member records will reflect the hours reported for each member by month as well as by fiscal year with respect to Future and Past Service

---

**4.** Our Court of Appeals has relied upon such DOL interpretive bulletins in construing the relevant provisions of ERISA. See e.g., *Kerns v. Benefit Trust Life Insurance Co.,* supra at 217, citing 29 C.F.R. § 2509.75–8 D–2; *Martin v. Feil-* *en,* 965 F.2d 660, 669 (8th Cir.1999), citing 29 C.F.R. § 2509.75–8, cert. denied, 506 U.S. 1054 (1993); *Anoka Orthopaedic Associates, P.A. v. Lechner,* supra at 514, citing 29 C.F.R. § 2509.75–5, –8.

Pension Credits, including the dollar amount on each member.

The member work record constitutes the means by which a member establishes his right to a pension benefit and is one of the sources of data, which will be required by the actuary for annual actuarial valuations.

The [Defendant] is to collect the necessary documents from the Union, the Employers and/or the Social Security Administration, as directed by [the Plaintiff], supporting and establishing each employee's entitlement to Past Service Pension Credits.

*Defendant's Exhibit 1*, at page 6.

Such functions are quintessentially ministerial in nature, and the mere performance of these duties does not transform a mere administrative functionary into an ERISA fiduciary. *Kerns v. Benefit Trust Life Insurance Co.*, supra at 217–18; *Anoka Orthopaedic Associates, P.A. v. Lechner*, supra at 517; *29 C.F.R. § 2509.75–5 D–2.*

The Plaintiff argues, however, that certain of the services, that are listed in the Schedule, reflect the Defendant's ability to exercise discretion in its administration and, correspondingly, to assume fiduciary responsibilities. The Plaintiff has focused upon the following:

1.  Respond to all requests from the National Fund Office regarding employer contributions and member hours worked, eligibility issues and any other matter needed to clarify benefits earned.

2.  Be responsible for the maintenance for all files having to do with the Pension Plan, e.g., Trust Agreements and other basic documents, correspondence with participating employers and employees, pension applications, addresses of participating employers and employees, etc.

3.  Determine quarterly eligibility of members with respect to the life insurance plan.

4.  Administer Money–Follows–the–Man or Pro–Rata Reciprocity Agreements, as approved by the [Plaintiff].

5.  Communicating with the National Fund Office concerning participant benefits and clarification and correction of individual transactions and personnel data.

*Defendant's Exhibit 1*, at pp. 6–8, 11.

Even assuming, for argument's sake, that any of these functions are at issue here, the Plaintiff has offered no evidence that the Defendant exercised any discretion in performing these services, or that the Defendant departed from the Plaintiff's written instructions in the performance of these tasks.[5]

More importantly, however, a fiduciary status as to one function does not evoke a fiduciary status as to all functions for, to imply such a status, we must find that the Defendant " 'is a fiduciary with respect to the particular area in question.' " *Maniace v. Commerce Bank of Kansas City*, supra; citing *Kerns v. Benefit Trust Life Insurance Co.*, supra. Here, the Plaintiff offers no evi-

---

**5.** In opposing the Defendant's Motion, the Plaintiff has proffered the Affidavit of Richard H. Gurske ("Gurske") who, apparently, served as the administrator of the Fund immediately before the Defendant. In his Affidavit, Gurske avers that he performed the functions that are listed in the Schedule of Services, *Affidavit of Richard Gurske*, at ¶ 5, and that, in completing those functions, he often exercised discretionary authority and control. *Id.* at ¶ 7. He also attests that "[i]t was [his] understanding as the outgoing Fund Administrator for the Plaintiff that [his] successor, namely the Defendant, would continue to perform these functions as [he] had done for the Fund in the past." *Id.* at ¶ 11.

In order to be legally cognizable, however, an affidavit, that is offered in opposition to a properly supported Motion for Summary Judgment, "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affi-

ant is competent to testify to the matters stated therein." *Rule 56(e), Federal Rules of Civil Procedure.* While Gurske is competent to testify concerning his own administration of the Fund, his Affidavit plainly discloses that he lacks the requisite personal knowledge to testify as to the Defendant's Fund activities, and his "understanding" of those activities is clearly incompetent speculation for Rule 56 purposes. More importantly, Gurske provides no evidence, however conclusory, as to the discretionary authority that the Defendant is purported to have exercised in creating a computerized system of recordkeeping.

Resort to such a foundationless affidavit seems particularly imprudent where, as here, the Plaintiff has been afforded the full scope of discovery allowed by the Federal Rules of Civil Procedure, and where the deadline for the completion of discovery was extended to a date that is coterminous with the date of Gurske's Affidavit.

dence that the Defendant exercised discretion in performing those functions which, assertedly, have given rise to the Plaintiff's claim—specifically, the balancing of Fund accounts, the posting of a participant's contributions, or the reconciliation of a participant's bookkeeping entries.

Nevertheless, the Plaintiff maintains that, in transferring the Fund's records from a manual to a computerized system, the Defendant exercised discretion in devising the computer system and, therefore, that discretion should be sufficient to instill fiduciary obligations upon the Defendant. A closely similar argument was raised, and rejected, in *Klosterman v. Western General Management, Inc.*, 32 F.3d 1119 (7th Cir.1994), where the Court observed:

> Here although [the plan administrator] developed the computer program that formed the main method of determining eligibility, they did not create it out of thin air. It was based upon the framework of rules (i.e., the plan) established by the employer. Furthermore, when discretion truly was required, in questionable cases, the ultimate decision belonged to [the plan's creator].

*Klosterman v. Western General Management, Inc.*, supra at 1124.

Here, the allegations of the Plaintiff's Complaint do not assert that the Defendant was rendering discretionary decisions as to benefit entitlements or to cash out distributions—indeed, the Plaintiff candidly acknowledges that the Defendant could not unilaterally execute those discretionary acts. Rather, the Plaintiff complains that the computerized program, which the Defendant devised, was subject to irregularities that required additional accounting and related expenditures. We are aware of no authority that would allow the recovery of monetary damages from one, such as the Defendant, who engages in no more than ministerial tasks, even if he does so imperfectly. See, *Mertens v. Hewitt Associates*, 508 U.S. 248, 255, 113 S.Ct. 2063, 2068, 124 L.Ed.2d 161 (1993); see also, *Kuhl v. Lincoln Nat'l Health Plan*, 999 F.2d 298, 304–05 (8th Cir.1993), cert. denied, — U.S. —, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994); *Kerns v. Benefit Trust*

*Life Ins. Co.*, supra at 217–18 (persons providing professional services to plan administrators "are not ERISA fiduciaries unless they 'transcend the normal role' and exercise discretionary authority"); *Martin v. Feilen*, supra at 669 n. 8 (professionals providing services to employee benefit plans were not fiduciaries); *Consolidated Beef Ind., Inc. v. New York Life Ins. Co.*, supra at 960 (same).

Were this not the rule, then the preemptive effect of ERISA—and, correspondingly, the uniform application of the law that the preemption was intended to effectuate—could be facilely circumvented by recasting a common law claim as a breach of some fiduciary duty. See, e.g., *FMC Corp. v. Holliday*, 498 U.S. 52, 60, 111 S.Ct. 403, 408, 112 L.Ed.2d 356 (1990) (Supreme Court has "applied the pre-emption clause to ensure that benefit plans will be governed by only a single set of regulations"). As the cited authorities make clear, the Courts have consistently denounced any interpretation of ERISA that would result in a "patchwork scheme of regulation," with attendant "inefficiencies that employers might offset with decreased [ERISA] benefits." *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 10–11, 107 S.Ct. 2211, 2217, 96 L.Ed.2d 1 (1987).

■ Finally, the Plaintiff urges that the Defendant owed a fiduciary duty to the Fund because it held the position as the Fund's Plan Administrator. In support of this contention, the Plaintiff directs our attention to a different provision of the DOL's interpretive bulletin, which states as follows:

Q: Does a person automatically become a fiduciary with respect to a plan by reason of holding certain positions in the administration of such plan?

A: Some offices or positions of an employee benefit plan by their very nature require persons who hold them to perform one or more of the functions described in [Section 1002(21)(A)]. For example, a plan administrator or a trustee of a plan must, be [sic] the very nature of his position, have "discretionary authority or discretionary responsibility in the administration" of the plan within the meaning of [Section 1002(21)(A)]. Persons who hold

such positions would therefore be fiduciaries.

*29 C.F.R. § 2509.75–8, D–3.*

We are not persuaded, by the Record before us, that the Defendant was a Plan Administrator, at least as that term is employed in ERISA since, "whether or not an individual or entity [is] an ERISA fiduciary must be determined by focusing on the function performed, rather than the title held." *Olson v. E.F. Hutton & Co., Inc.,* supra at 625, quoting *Blatt v. Marshall & Lassman,* 812 F.2d 810, 812–13 (2d Cir.1987); see also, *Consolidated Beef Industries v. New York Life Ins.,* supra at 964 ("a person's title does not necessarily determine if one is a fiduciary"). Here, we have already noted that the Plaintiff has proffered no showing that the Defendant had assumed a fiduciary status, and the terms of the operative contract repudiates the propriety of any such status.

Moreover, an ERISA Plan Administrator is defined as "the person specifically so designated by the terms of the instrument under which the plan is operated * * *." *Title 29 U.S.C. § 1002(16)(A)(i).* The parties' Agreement, however, does not expressly, or impliedly, designate the Defendant as an ERISA "Plan Administrator," and we are confident that, if that were the parties' intention, they would have made their wishes known.

Accordingly, finding no basis to hold the Defendant liable as an ERISA fiduciary, we grant the Defendant's Motion for Summary Judgment.[6]

NOW, THEREFORE, It is—

ORDERED:

---

**6.** We suspect that it might be argued—although the Plaintiff does not do so—that, assuming that the Plaintiff was damaged, then it has sustained a wrong for which there is no remedy under the State laws of Minnesota, so there must be a remedy under ERISA. The argument was rejected, however, in *Consolidated Beef Industries v. New York Life Ins.,* supra at 964, where the Court noted that, "because ERISA allows equitable relief against both fiduciaries and non-fiduciaries, Congress intended pre-emption to apply even where no ERISA fiduciary remedy existed." Finding, as we do, that the Plaintiff's State law claims are preempted, it may not recover money

That the Defendant's Motion for Summary Judgment [Docket No. 9] is GRANTED.

---

damages—the only remedy that the Plaintiff has specifically sought.

Lastly, since the parties have not addressed the matter, we also leave untouched the issue of whether the Plaintiff's claim, under ERISA, is time-barred, or whether that defense has been waived. See, *Title 29 U.S.C. § 1113(2); Schaefer v. Arkansas Medical Soc.,* 853 F.2d 1487, 1491–92 (8th Cir.1988). While the Plaintiff's original State law claim was subject to a six-year Statute of Limitations, see *Minnesota Statutes Section 541.05, Subdivision 1(1),* Minnesota law would not govern the viability of the Plaintiff's ERISA claim.