# IN THE SUPREME COURT OF IOWA

No. 70 / 05-0246

Filed July 28, 2006

**MARY EGGIMAN,**

Appellant,

vs.

**SELF-INSURED SERVICES CO., and R.H. HUMMER, JR., INC.,**

Appellees.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Johnson County, Douglas S. Russell, Judge.

Plaintiff seeks further review from court of appeals decision affirming district court order that granted defendants' summary judgment motion and dismissed plaintiff's claim for benefits under a medical insurance policy. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT ORDER REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS.**

Wallace L. Taylor, Cedar Rapids, for appellant.

Larry G. Gutz and Brian J. Fagan of Moyer & Bergman, P.L.C., Cedar Rapids, for appellees.

**STREIT, Justice.**

A woman suffering from clinical obesity alleges the company processing claims on behalf of her health insurance plan made misrepresentations that led her to obtain treatment not covered by the plan. Mary Eggiman filed the present action against her husband's employer, R.H. Hummer, Jr., Inc., and Self-Insured Services Company (SISCO), the claims processor for the health insurance plan. Hummer and SISCO filed a motion for summary judgment. This motion argued the denial of benefits was proper because Eggiman failed to obtain pre-authorization for the surgery. The motion also argued the misrepresentation claim against SISCO was improper because SISCO was not a fiduciary under the Employment Retirement Income and Security Act (ERISA). 29 U.S.C. §§ 1001, *et seq.* (2000). The district court found as a matter of law it was proper to deny benefits based on Eggiman's failure to obtain pre-authorization. The court also concluded SISCO was not an ERISA fiduciary and therefore could not be found liable for any allegedly misleading statements made to Eggiman. The court of appeals affirmed the district court ruling. On further review, we vacate the decision of the court of appeals and reverse the portion of the district court order which found SISCO was not an ERISA fiduciary and therefore could not be liable for any misleading statements made to Eggiman.

## I. Background Facts and Proceedings

Eggiman suffers from clinical obesity. In 2001, her physician recommended she consider gastric bypass surgery. Eggiman is insured through her husband's employer, R.H. Hummer, Jr., Inc., a trucking firm. Hummer utilized a self-insured health and medical plan (hereinafter "Hummer Health Plan") as a benefit for its employees. The

Hummer Health Plan is governed by a "plan document" detailing the benefits, rights, and privileges of covered individuals. In essence, the plan document explains when the plan will pay or reimburse all or a portion of covered expenses. SISCO marketed and sold this plan to Hummer. SISCO is also the "claims processor" for the plan. Through a service agreement between SISCO and Hummer, SISCO contractually agreed to perform various functions related to the administration of the plan. Healthcorp, Inc., SISCO's sister company underneath the same corporate umbrella, is listed in the plan document as the "review organization."

The Hummer Health Plan provides the following conditions for the coverage of a gastric bypass procedure:

> 26. Charges for services in connection with surgical treatment of morbid obesity will be considered Eligible Expenses, subject to the following conditions:
>
> > a. A second concurring opinion is required prior to the surgical procedure; and
> >
> > b. Pre-authorization is required.
>
> Coverage is subject to the following guidelines:
>
> > a. Body weight must be at least 200% of the optimal weight.
> >
> > b. The covered individual must have been considered morbidly obese by a Physician for at least five (5) years prior to the date surgical treatment is sought.
> >
> > c. Non-surgical methods of weight reduction must have been attempted under a Physician's supervision for at least a three (3) year period immediately prior to the date surgical treatment is sought.

On April 23, 2001, a health insurance review specialist hired by Eggiman's physician sent a letter to SISCO requesting a review and authorization for the gastric bypass surgery. Among other things, the

physician's health insurance review specialist informed SISCO that Eggiman weighed 283.8 pounds and was 132.8 pounds overweight.

On May 14, 2001, the physician's health insurance review specialist received a letter from Cottingham & Butler (hereinafter "C&B")[1] denying "eligibility" because the following criteria had not been met: (1) Eggiman's weight was less than 200% of her optimal weight, (2) there was no documentation from a physician indicating she had been morbidly obese for at least five years, (3) there was no documentation of at least three years of unsuccessful physician supervised weight-loss plans, and (4) there was no second surgical opinion.

On June 5, 2001, Eggiman received a letter from C&B, signed HealthCorp, Inc., informing her that "hospitalization cannot be certified due to" insufficient information. Eggiman called SISCO and spoke with a representative about what information was still needed for certification.

On June 15, 2001, the physician's health insurance review specialist received another letter from C&B. This letter stated the following criteria had been met: (1) Eggiman was considered morbidly obese by a physician for at least the previous five years, and (2) non-surgical methods of weight reduction had been attempted under a physician's supervision for at least a three year period prior to the date of the proposed surgery. However, the letter denied "eligibility" because a second surgical opinion had not been obtained and Eggiman's weight was only 188% of her ideal weight. There is no indication this letter was sent to Eggiman.

---

[1]C&B is the parent company of SISCO and HealthCorp. All correspondence pertinent to this claim was sent on C&B stationery. This stationery listed the names SISCO and HealthCorp under the name C&B.

On the same day, Eggiman received a letter from C&B, signed HealthCorp. Inc., that stated:

> [Mary Eggiman] has been pre-certified for a GASTRIC BYPASS FOR OBESITY by HealthCorp, the managed care company selected by your employer. At this time a date has not been established for the procedure. HealthCorp should be notified . . . when a date is confirmed.
>
> The physician, SISCO, and the hospital have been notified of your certification. IT DOES NOT GUARANTEE PAYMENT.
>
> Healthcorp's certification process evaluates the appropriate length of hospital stay and/or the appropriateness of services provided. Please be advised that the determination of your benefits will be decided by the rules within your company's health plan document. Any reimbursement is based on the services that were provided, the participant's eligibility and the plan limitations.

(Emphasis in original.)

On July 24, 2001, Eggiman received another letter from C&B, signed by HealthCorp. Inc. The letter stated the following:

> This letter is to notify you that your upcoming hospitalization, listed above, has been precertified. The length of stay precertified is an anticipated length of stay. If additional days are medically appropriate, the length of stay will be increased.
>
> You will receive a "final certification" letter after your discharge from the hospital. The final letter will include all days certified for this hospitalization.
>
> Healthcorp's certification process determines the medical appropriateness of hospitalization and/or services provided. The final determination of continued hospitalization is the decision of the attending physician. *The final determination of benefits will be made by SISCO.* Any reimbursement is based on the medical appropriateness of services provided, participant's eligibility, and plan limitations.
>
> The admitting physician, SISCO, and the hospital have been notified of your precertification. This precertification provided by Healthcorp satisfies the requirements of your employer's admission review process.

(Emphasis added.) This letter contained language indicating the final determination of benefits would be made by SISCO. Eggiman had received similar letters from SISCO and the bills were always paid.

The surgery was performed on July 30, 2001. Eggiman had a second surgery on August 14, 2001 to repair a leak in the surgical incision from the first surgery. She was also "precertified" by HealthCorp for this second surgery.

On September 11, 2001, Eggiman received a letter from C&B indicating both surgeries were not covered under the plan because "all items" were not satisfied. Specifically, the letter stated her body weight was not 200% of her optimal weight and a concurring secondary surgical opinion had not been obtained. In addition, in direct conflict with the letter sent on June 15, the letter stated a physician had not considered her morbidly obese for at least five years prior to the date of surgery, and there was no record of non-surgical weight reduction attempted under a physician's supervision for the three year period immediately prior to the surgery.

Eggiman filed the present action on October 12, 2003 against both Hummer and SISCO claiming she was denied medical and health care benefits to which she was entitled under the Hummer Health Plan. Hummer and SISCO filed a motion for summary judgment. The motion pointed out that "pre-certification" and "pre-authorization" were two separate concepts under the Hummer Health Plan. While Eggiman was "pre-certified," she was never "pre-authorized" and therefore failed to meet the criteria set forth in the plan.[2] The motion also argued SISCO

---

[2]"Pre-certification" is described in the plan as a "mandatory utilization review requirement . . . required for all scheduled Hospital admissions and Outpatient services. . . . Pre-certification determines that services received are Medically Necessary." On the other hand, the term "pre-authorization" was listed as a

should be dismissed from the lawsuit because it did not qualify as an ERISA fiduciary and therefore was not liable to Eggiman.

Eggiman resisted the motion, claiming she had complied with all of the requirements demanded of her prior to the surgery. She also indicated she was never told she was not pre-authorized for the surgery until after the surgery was complete. She also argued SISCO's representations and actions led her to believe the procedure was covered. The district court concluded no genuine issue of material fact remained as to her coverage under the terms of the plan. The court found as a matter of law it was proper to deny benefits for the surgery because Eggiman failed to obtain pre-authorization. The court further found SISCO held no fiduciary responsibility to Eggiman, as contemplated under ERISA, and SISCO therefore could not be found liable for any allegedly misleading statements it made to Eggiman. The district court made no ruling on whether the statements were, or were not, misleading.

Eggiman appealed and the court of appeals affirmed the district court's ruling. The court of appeals noted Eggiman did not "specifically contest" the district court's conclusion that it was proper to deny benefits based on Eggiman's failure to obtain pre-authorization. Eggiman conceded her appeal was based on the position she had a valid ERISA claim because of the misleading statements made by SISCO. The court of appeals found this misrepresentation issue was not properly preserved for appellate review. We granted Eggiman's application for further review.

---

requirement for gastric bypass surgery, but it was not defined or otherwise described in the plan.

## II.  Scope of Review

Summary judgment is proper only when the record shows no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Iowa R. Civ. P. 1.981(3).  The court must view the record in the light most favorable to the nonmoving party.  *Lloyd v. Drake Univ.*, 686 N.W.2d 225, 228 (Iowa 2004).  In deciding whether there is a genuine issue of material fact, the court should also afford the nonmoving party every legitimate inference the record will bear. *Smidt v. Porter*, 695 N.W.2d 9, 14 (Iowa 2005).  Our review of a summary judgment ruling is for correction of errors at law.  *Hlubek v. Pelecky*, 701 N.W.2d 93, 95 (Iowa 2005).

## III.  Merits

The district court made an adverse ruling on Eggiman's coverage claim.  It concluded there was no factual dispute with regard to the approval Eggiman was required to obtain before the surgery and it was therefore proper to deny benefits based on her failure to obtain pre-authorization.  Eggiman does not contest this finding on appeal.  Instead, she argues she has a valid ERISA claim because SISCO's misleading statements erroneously caused her to believe she would be covered under the plan.  We therefore proceed to analyze her misrepresentation claim.

### A.  Misrepresentation

### 1.  Error Preservation

Although not argued by either party, the court of appeals determined Eggiman's misrepresentation claim was not preserved for appellate review.  It is a fundamental doctrine of appellate review that issues must ordinarily be raised and decided by the district court before we will decide them on appeal.  *Metz v. Amoco Oil Co.*, 581 N.W.2d 597,

600 (Iowa 1998). In order to preserve error for appeal, the party who raised an issue that was not ruled upon must file a motion requesting a ruling.

The court of appeals concluded there was no ruling on the misrepresentation issue and Eggiman failed to file a motion requesting such a ruling. We disagree. The district court expressly addressed Eggiman's misrepresentation argument in its ruling. The district court said:

> Plaintiff argued at hearing that the representations and actions of SISCO led both plaintiff and the health care provider to believe that the procedure was covered. Plaintiff asserted she was "encouraged" by [a SISCO claims representative] to go ahead with the surgery, leading plaintiff to believe the surgery was covered. . . . Finally, Plaintiff argued that SISCO is a fiduciary in this matter.

Later, the district court stated:

> The Court turns to the issue of whether SISCO is a fiduciary and, therefore, is liable to [plaintiff]. ERISA provides a cause of action for a fiduciary's *misrepresentation* of health plan coverage. To establish a breach of fiduciary duty, Plaintiff must prove SISCO is an ERISA fiduciary.

(Emphasis added.) The district court then determined, based on the terms in the service agreement between Hummer and SISCO, SISCO was not an ERISA fiduciary. Because SISCO was not an ERISA fiduciary, the court determined SISCO did not have a fiduciary responsibility to Eggiman.

Although the court did not address whether SISCO's letters were actually misleading, it did rule on Eggiman's misrepresentation claim by concluding SISCO had no fiduciary duty to Eggiman. As discussed below, fiduciary status was a preliminary requirement for Eggiman's misrepresentation claim. Eggiman was not required to file a motion asking the court to hypothecate whether it would have found the

statements misleading had it determined SISCO was an ERISA fiduciary. Indeed, it would have been improper for the court to do so. *See Wickey v. Muscatine County*, 242 Iowa 272, 287, 46 N.W.2d 32, 40 (1951) (holding Iowa courts decline to issue opinions on nonjusticiable issues). Therefore the misrepresentation issue was adequately preserved for our review.

### 2. Cause of Action

Eggiman argues SISCO's allegedly misleading statements caused her to have the surgery because she erroneously believed she would be covered under the Hummer Health Plan.

Our analysis begins with the cause of action as established under ERISA. ERISA was enacted to

> protect . . . the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

29 U.S.C. § 1001(*b*). In keeping with this design, ERISA imposes several fiduciary duties on certain entities. Specifically, 29 U.S.C. § 1104(*a*)(1), which governs fiduciary duties, provides in relevant part:

> a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
> (A) for the exclusive purpose of:
> (i) providing benefits to participants and their beneficiaries; and
> (ii) defraying reasonable expenses of administering the plan;
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . .

Several courts have held that misleading communications to plan participants regarding plan administration (i.e. eligibility under a plan or the extent of benefits under a plan) support a claim for breach of fiduciary duty. *Berlin v. Mich. Bell Tel. Co.*, 858 F.2d 1154, 1163 (6th Cir. 1988); *see also Peoria Union Stock Yards Co. Ret. Plan v. Penn Mut. Life Ins. Co.*, 698 F.2d 320, 326 (7th Cir. 1983) ("Lying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in [29 U.S.C. § 1104].")*; Rosen v. Hotel & Rest. Employees & Bartenders Union*, 637 F.2d 592, 600 n.11 (3d Cir. 1981) (holding a fiduciary is under a duty to communicate material facts to a plan beneficiary); *Muenchow v. Parker Pen Co.*, 615 F. Supp. 1405, 1417 (W.D. Wis. 1985) (stating "ERISA supplies plaintiffs a remedy for the wrong [of misrepresentation by fiduciaries] alleged in their complaint"); *Dist. 65, UAW v. Harper & Row Publishers, Inc.*, 576 F. Supp. 1468, 1480 (S.D.N.Y. 1983) (precluding summary judgment on claim fiduciary breached its fiduciary duties by failing to provide the plan participants with information necessary to make an informed decision). The first step in such a claim is proof the person supplying the misleading information qualifies as an ERISA fiduciary. *Ince v. Aetna Health Mgmt., Inc.*, 173 F.3d 672, 674 (8th Cir. 1999); *Greenblatt v. Prescription Plan Servs. Corp.*, 783 F. Supp. 814, 820 (S.D.N.Y. 1992).

### 3. ERISA Fiduciary

An entity is an ERISA fiduciary if it performs fiduciary functions. *Bd. of Trustees of the W. Lake Superior Piping Indus. Pension Fund v. Am. Benefit Plan Adm'rs, Inc.*, 925 F. Supp. 1424, 1433 (D. Minn. 1996) (recognizing the status of a person providing administrative services to an ERISA plan is not determined by the person's title, label, or designation, but rather by whether the person performs or has been

assigned functions that fall within the scope of 29 U.S.C. § 1002(21)(A)). ERISA provides a person is an ERISA fiduciary if:

> (i) he exercises *any* discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has *any* discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A) (emphasis added).

Because ERISA was enacted to protect participants in employee benefits plans, courts give the term "fiduciary" a liberal construction to maintain the remedial purpose of ERISA. *Am. Fed'n of Unions v. Equitable Life Assurance Soc'y*, 841 F.2d 658, 662 (5th Cir. 1988). In essence, so long as SISCO exercised discretionary authority over the management of the Hummer Health Plan or had discretionary authority or responsibility in the plan's administration, then SISCO qualifies as an ERISA fiduciary for the purposes of Eggiman's claim. *See* 29 U.S.C. § 1002(21)(A).

The district court concluded, as a matter of law, SISCO was not an ERISA fiduciary because the duties set forth in the service agreement between Hummer and SISCO did not give SISCO a fiduciary responsibility with regards to Eggiman. The court also concluded SISCO did not utilize any discretionary authority.

We find such a conclusion was, at best, premature. Eggiman has produced evidence that could lead a fact finder to conclude SISCO's *actions* made it an ERISA fiduciary. Eggiman points out that SISCO or its parent company drew up the terms of the benefits plan and made all

the decisions and exercised all of the authority and discretion in determining whether her claim was approved or denied.

In *Brock v. Self*, 632 F. Supp. 1509, 1519-21 (W.D. La. 1986), a Louisiana district court found a pension plan service company, its chief executive officer, and an employee managing its pension and profit-sharing plan servicing operations were all ERISA fiduciaries because they had, among other things, helped to design the plan, provided all of the documents and materials necessary to establish the plan, and had admitted responsibility to amend the plan to conform to ERISA requirements.

While the service agreement between Hummer and SISCO states SISCO was to "provide assistance in the preparation of plan documents and plan amendments" at Hummer's request, testimony from Ronald Hummer, Jr., the owner of R.H. Hummer, Jr., Inc. indicates SISCO did much more than "provide assistance." Mr. Hummer testified that SISCO devised and prepared the entire plan with little or no input from him. The only input Mr. Hummer had in the plan was the dollar amount of the deductible paid by Hummer. There is an obvious conflict between the plan's rendition of who drafted the plan and Ronald Hummer's testimony about who drafted the plan; therefore, taking the facts in the light most favorable to the nonmoving party, there is a reasonable inference that SISCO designed the plan and provided all materials necessary to establish the plan.

There is also enough evidence to support a reasonable inference that SISCO had the authority to exercise its own discretion to determine whether Eggiman's claim was covered. According to the Department of Labor, a person or entity is not considered an ERISA fiduciary even though the person or entity processes claims and makes

recommendations to others for decisions with respect to plan administration. 29 C.F.R. § 2509.75-8, D-2 (2005). However, in the present case, there is enough evidence for a reasonable person to conclude SISCO did much more than merely process claims and make recommendations. While the plan document gave Hummer the authority "to control and manage the operation and administration of the Plan," and the "sole authority and responsibility to review and make final decisions on all claims," it also stated "Hummer may delegate responsibilities for the operation and administration of the plan." Hummer made such a delegation in the service agreement with SISCO. The agreement held SISCO was to provide "claims administration" and "shall . . . [m]ake claim payment decisions, except when specifically directed by the Employer." This delegation of power arguably gave SISCO *some* discretionary authority over Eggiman's claim.

Beyond the authority listed in the service agreement, the testimony from Ronald Hummer, the correspondence from HealthCorp, and SISCO's actions in processing Eggiman's claim also point towards discretionary authority. In his deposition, Ronald Hummer repeatedly stated that SISCO made the decision whether to approve or deny claims. He stated, "I don't make that judgment call. We hired SISCO to do that." It was Ronald Hummer's understanding that he, as the employer, had "no say-so in how [the plan] was administrated." Likewise, in the July 24 letter to Eggiman, HealthCorp told Eggiman "[t]he *final* determination of benefits will be made by SISCO." (Emphasis added.) The present record does not indicate SISCO ever asked Ronald Hummer whether Eggiman's claim should be pre-authorized, approved, or disapproved. These decisions were apparently all made by SISCO itself.

SISCO's argument that the court should find, as a matter of law, SISCO did not have discretionary authority because Hummer held the ultimate authority to approve or deny all claims is not persuasive. In *American Federation of Unions v. Equitable Life Assurance Society*, an administrator was held to be a fiduciary because he was empowered to investigate, process, resolve, and pay claims to members of an ERISA fund. 841 F.2d at 662-63. The court concluded those functions qualified "as discretionary control respecting management of a plan or its assets within the meaning of § 1002(21)(A)." *Id.* at 663. The court stated, "[the administrator's] fiduciary status was not diminished by the trustees' final authority to grant or deny claims and approve investments. The term fiduciary includes those to whom *some* discretionary authority has been delegated." *Id.* (emphasis added). Even though Hummer possessed the ultimate authority to approve or deny Eggiman's benefit claim, Eggiman has produced enough evidence to suggest some discretionary authority had been delegated to SISCO and SISCO acted for the purposes of Eggiman's claim, as an ERISA fiduciary.[3]

---

[3]SISCO's argument that it had no discretionary authority because it was bound to follow the terms and criteria set forth in the Hummer Health Plan is not dispositive at the summary judgment level. As stated in *Protocare of Metropolitan N.Y., Inc. v. Mutual Association Administrators, Inc.*, 866 F. Supp. 757, 762 (S.D.N.Y. 1994), "[a] person who has *no power to make any decisions* on plan policy, interpretations, procedures or practices, but who applies the rules determining eligibility for participation or benefits in the plan is not a fiduciary." (Internal quotations and citations omitted; emphasis added.) While the plan document sets forth the criteria for benefits, Hummer's testimony was that SISCO wholly designed the plan and was hired to make all decisions on whether to approve or deny benefit claims. Therefore, taking the facts in the light most favorable to the nonmoving party, we cannot find that SISCO had "no power to make any decisions." *See id.*

**IV. Conclusion**

We do not disturb the district court's conclusion that it was proper to deny benefits based on Eggiman's failure to obtain pre-authorization. However, we reverse the decision which found, as a matter of law, SISCO owed no fiduciary responsibility to Eggiman. As once stated by the United States Court of Appeals for the Fourth Circuit:

> Even in cases where the judge is of the opinion that he will have to direct a verdict for one party or the other on the issues that have been raised, he should ordinarily hear the evidence and direct the verdict rather than attempt to try the case in advance on a motion for summary judgment, which was never intended to enable parties to evade jury trials or have the judge weigh evidence in advance of it being presented.

*Pierce v. Ford Motor Co.*, 190 F.2d 910, 915 (4th Cir. 1951). Based on the present record, a reasonable fact finder could conclude Hummer drafted the health plan and, despite Ronald Hummer's testimony to the contrary, held all the authority and exercised all discretion to approve or deny claims. On the other hand, a reasonable fact finder could conclude SISCO's actions went far beyond merely processing claims and making recommendations. The fact finder might conclude SISCO sold the plan to Hummer as a full service plan but then wrote the plan document so as to shield itself from ERISA fiduciary status.

When two legitimate, conflicting inferences are present at the time of ruling upon the summary judgment motion, the court should rule in favor of the nonmoving party. *See Daboll v. Hoden*, 222 N.W.2d 727, 733 (Iowa 1974) ("If reasonable minds could draw different inferences and reach different conclusions from the facts, even though undisputed, the issue must be reserved for trial."). In this case, the court balanced and weighed the evidence to reach an ultimate decision on the merits of the

case. As noted above, the court's role *at the time of summary judgment* was to determine whether a rational trier of fact could conclude SISCO was an ERISA fiduciary, not to make an ultimate decision on the merits of the case. Because reasonable minds could draw different inferences from the conflicting set of facts in this case, the district court's decision to find against Eggiman on this motion for summary judgment was erroneous.[4] We therefore vacate the decision of the court of appeals and reverse the district court's decision in part and remand for further proceedings.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT ORDER REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS.**

---

[4]Although we do not conclude, as a matter of law, that SISCO was an ERISA fiduciary, we do conclude there is enough evidence in the record for a rational trier of fact to conclude that SISCO was a fiduciary with respect to the Plan.